UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTUON EUGENE GREY,<br><br>                                    Plaintiff,<br><br>v.<br><br>WARREN L. MONTGOMERY<br>Warden,<br><br>                                    Defendant. | Case No.:  16-cv-2764-GPC-AGS<br><br>**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Presently before this Court is a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, filed by Petitioner Antuon Eugene Grey ("Petitioner"), a state prisoner proceeding with counsel.  Pet., Dkt. No. 1.  In his petition, Grey seeks to challenge his convictions in San Diego Superior Court for murder, attempted murder, and assault with firearm.  Pet., Dkt. No. 1.  On March 15, 2017, Respondent Warren L. Montgomery, Warden, filed an Answer and Memorandum of Points and Authorities in Support of the Answer ("Answer") and Lodgments.  Dkt. Nos. 14–15.  Petitioner filed a Traverse on June 19, 2017.  Dkt. No. 20.  On September 20, 2018, Magistrate Judge John L. Weinberg issued a Report and Recommendation ("Report") recommending that this

Court deny the request for an evidentiary hearing and deny the Petition. Dkt. No. 22.

Petitioner filed a written objection to the Report on October 6, 2018.[1]

After a thorough review of the issues and documents presented, this Court **ADOPTS** the Magistrate Judge's Report and Recommendation, **DENIES** Petitioner's request for an evidentiary hearing, **OVERRULES** Petitioner's objections, **DENIES** the petition for a writ of habeas corpus, and **DENIES** a certificate of appealability.

## I. BACKGROUND

### A. Factual Background

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Parle v. Fraley*, 506 U.S. 20, 35–36 (1992) (holding findings of historical fact, including inferences properly drawn from those facts, are entitled to statutory presumption of correctness). This Court provides the following summary of the facts based on the opinion of the California Court of Appeal.

> On January 20, 2012, Hopeton Bennett, a member of the Parkside/Skyline gang known as "Baby Dos," was shot and killed, and Parkside/Skyline gang member Julian Velasquez was shot. Grey was also a member of the Parkside/Skyline gang and was known as "Little Dos." The naming arrangement between Grey and Bennett indicated that Grey was something of a mentor to Bennett.
>
> The following day, [Dave] Lockett was visiting some family members at an apartment complex on Solola Avenue in San Diego. While in the parking lot, Lockett ran into an acquaintance, [Edwin] Jackson, who lived at the complex. Jackson was a member of the Lincoln Park gang, the chief rival of Parkside/Skyline gang. The Lincoln Park gang was known to occupy the apartment complex on Solola Avenue.
>
> As Lockett started back to his relative's apartment, he saw two black males, one of whom he later identified as Grey, approaching from the parking lot entrance. Another witness heard Jackson ask the men, "Blood,

---

[1] Although Petitioner filed the objection after the October 5, 2018 deadline established by the Report pursuant to Local Civil Rule HC.2 of the United States District Court of the Southern District of California, the Court finds that there is no prejudice from the untimely filing and will excuse the one-day delay.

who is you niggers?" After a brief exchange, Grey pulled a firearm from his sweatshirt pocket and fired the weapon, striking Lockett in the stomach as Lockett dove to the ground. Lockett then heard running footsteps and multiple gunshots. A number of these shots struck Jackson, who died from his injuries. Police recovered a beanie hat from the scene with DNA analysis producing a match to Grey's brother.

Later that day, Lockett gave a description of the shooter to police, noting that the shooter had a lot of acne on his face. Lockett, however, did not get a good look at the face of Grey's companion. As a result of the DNA match, police went to the residence of Grey's brother where they encountered and photographed Grey, who had distinctive acne on his face and appeared to fit the general description of the shooter. Police recovered from the residence a pamphlet for Bennett's funeral memorial.

Police later conducted an audio-recorded lineup with Lockett. Lockett selected Grey's photograph out of a five-photograph lineup and identified him as the shooter. The detective, however, forgot to have Lockett sign the photograph. The following day, police conducted another audio-recorded photographic lineup with Lockett. Lockett again identified Grey's photograph as the shooter and signed the photograph. Lockett testified at trial he had no doubt and was "100 percent" sure Grey was the shooter.

A gang expert testified regarding gangs and gang culture, including that acts of violence between rival gangs result in violent retaliation. Based on a hypothetical mirroring the prosecution's evidence, including the shooting death of Bennett approximately 30 hours earlier, the gang expert opined that the shooting in this case was committed for the benefit of the Parkside/Skyline gang.

Pet., Dkt. No. 1-3 at 2–4.

## B. Procedural Background

On January 7, 2013, the San Diego District Attorney's Office filed a complaint charging Petitioner with the following: Count One, murder of Edwin Jackson, in violation of California Penal Code (Penal Code) § 187(a); Count Two, attempted murder of Dave Lockett, in violation of Penal Code §§ 187(a) and 664; and Count Three, assault with a semiautomatic firearm upon Dave Lockett, in violation of Penal Code § 245(b). Dkt. No. 15-17 at 1–6. As to Counts Two and Three, the complaint also alleged Petitioner had personally used a firearm, within the meaning of Penal Code § 12022.5(a), had committed the crimes alleged in those counts for the benefit of, at the direction of and in

association with a gang with intent to promote further and assist the gang's criminal

activities, within the meaning of Penal Code § 186.22(b)(1), and personally inflicted

great bodily injury, within the meaning of Penal Code § 12022.7(a). *Id.* at 3–4. In

addition, the complaint alleged Petitioner had suffered a prior conviction, for which he

had served a prison sentence, within the meaning of Penal Code §§ 667.5(b) and 668, and

had suffered a prior "strike" conviction, within the meaning of Penal Code §§ 667(b)–(i),

1170.12, and 668, California's Three Strikes Law. *Id.* at 5. Following a jury trial,

Petitioner was convicted on all counts and the jury found all the allegations to be true.

Lodgment No. 8, Vol. 3 at 665-70.

Petitioner appealed his conviction to the California Court of Appeal, Fourth

Appellate District, Division One. Lodgment No. 4. The state appellate court affirmed

Petitioner's conviction in a written, unpublished decision. Pet., Dkt. No. 1-3. Petitioner

then filed a petition for review in the California Supreme Court, which summarily denied

the petition. Lodgment No. 1. Petitioner then filed a habeas corpus petition in the

California Supreme Court. Lodgment No. 2. The California Supreme Court summarily

denied the petition. Lodgment No. 3.

On November 9, 2016, Petitioner filed a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 in this Court. Pet., Dkt. No. 1. On March 15, 2017,

Respondent filed an Answer and Memorandum of Points and Authorities in Support of

the Answer ("Answer") and Lodgments. Dkt. Nos. 14–15. Petitioner filed a Traverse on

June 19, 2017. Dkt. No. 20. On September 20, 2018, Magistrate Judge John L.

Weinberg issued a Report and Recommendation ("Report") recommending that this

Court deny the request for an evidentiary hearing and deny the Petition. Dkt. No. 22.

Petitioner filed a written objection to the Report on October 6, 2018. Dkt. No. 23.

## II.   STANDARD OF REVIEW

### A.   Magistrate Judge's Report and Recommendation Standard of Review

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) outline the

procedure regarding the district court's treatment of a magistrate judge's report and

recommendation. The district court "may accept, reject, or modify, in whole or in part, the findings of recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also United States v. Raddatz*, 447 U.S. 667, 675 (1980). Because objections were made, the Court reviews *de novo* the parts of the magistrate judge's findings and recommendations to which specific objections have been made. FED. R. CIV. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

## B.     AEDPA Standard of Review of Habeas Petition

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a court will not grant a habeas petition with respect to any claim adjudicated on the merits by the state court unless that adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Early v. Packer*, 537 U.S. 3, 7–8 (2002) (quoting 28 U.S.C. § 2254(d)).

A federal court may grant habeas relief under the "contrary to" clause if the state court applied a different rule than the governing law established by the Supreme Court, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court need not cite Supreme Court precedent when resolving a habeas corpus claim "so long as neither the reasoning nor the result of the state-court action contradicts [Supreme Court precedent]." *Early*, 537 U.S. at 8.

The court may grant relief under the "unreasonable application" prong if the state court correctly identified the governing Supreme Court principle but unreasonably applied it to the facts of the case. *Bell*, 535 U.S. at 694. Additionally, the "unreasonable application" prong requires the state court's application of clearly established federal law to be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The

5

Court may also grant relief if the state court's decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

A federal court uses the decision of the highest state court to make its habeas determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–06 (1991). However, if no reasoned decision from the highest state court exists, the Court "looks through" the unreasoned judgment to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *Id.* at 805–06.

## III. DISCUSSION

Petitioner requests habeas relief based on four grounds: (1) the trial judge improperly removed a juror when, following the testimony of the eyewitness defense expert, the juror realized he had participated in some of the studies the witness had performed while at the University of Texas, Dkt. No. 1-2 at 1–5; (2) ineffective assistance of trial counsel for failing to present exculpatory alibi evidence to support a defense of mistaken identification, *Id.* at 6–19; (3) ineffective assistance of trial counsel for failing to object to the removal of the juror, *Id.* at 19–23; and (4) the trial judge wrongly refused to instruct the jury to view the eyewitness identification with caution, *Id.* at 23. Because Petitioner filed his federal habeas petition in 2016, it is subject to the provisions of AEDPA.

### A. Removal of Juror No. 8 (ground one)

First, Petitioner alleges the trial judge improperly removed Juror No. 8 during the trial after that juror told the judge he had attended the same university at which the expert taught. The juror also informed the judge that he had participated in some of the studies on eyewitness testimony the expert cited. Pet., Dkt. No. 1-2 at 1–5; Traverse, Dkt. No. 20-1 at 11–20. Specifically, Petitioner contends the state court's denial of this claim was based on an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2) because Juror No. 8's statements did not establish he was biased, only that he harbored serious doubt about the reliability of eyewitness testimony. As such, Petitioner asserts

that the removal of the juror therefore violated Petitioner's due process and fair trial rights.  Traverse, Dkt. No. 20-1 at 19.

Respondent claims this ground is procedurally defaulted because the last reasoned state court decision, the California Court of Appeal's opinion, concluded Petitioner had failed to object to the discharge of the juror and had therefore forfeited the claim.  P. & A. Supp. Answer, Dkt. No. 14-1 at 14.  In any event, Respondent argues, the claim is also meritless even if Petitioner's procedurally barred claim had been excused.  *Id.* at 14–18.

### 1.    Procedural Default

Because the California Supreme Court summarily denied Petitioner's petition for review in which he raised his claim regarding Juror No. 8, this Court must "look through" to the state appellate court's decision.  *Ylst*, 501 U.S. at 805–06.  That court concluded the claim had been waived under *People v. Holt*, 15 Cal. 4th 619, 656 (1997) because defense counsel failed to object to the juror's removal.  Pet., Dkt. No. 1-3 at 9–10.  The appellate court went on to address the merits of the claim and denied Petitioner relief.  *Id.* at 10–11.

The Ninth Circuit has held that procedural default is an affirmative defense.  As a result, in order to establish a claim is procedurally defaulted, Respondent must first "adequately [plead] the existence of an independent and adequate state procedural ground . . . ." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003).  To place the defense at issue, Petitioner must then "assert[] specific factual allegations that demonstrate the inadequacy of the state procedure . . . ." *Id.*  The "ultimate burden" of proving procedural default, however, belongs to the state.  *Id.*  If the state meets its burden under *Bennett*, federal review of the claim is foreclosed unless the Petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A state procedural rule is "independent" if the state law basis for the decision is not interwoven with federal law. *Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983); *Harris*

*v. Reed*, 489 U.S. 255, 265 (1989). A ground is "interwoven" with federal law if the state has made application of the procedural bar depend on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed. *See Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 60 (2009)). All cases cited by a state court must be independent and adequate to bar federal review of the claims. *Washington v. Cambra*, 208 F.3d 832, 834 (9th Cir. 2000).

Petitioner contends his claim is not procedurally defaulted because the state court decided the merits of his claim in addition to imposing a procedural bar. Dkt. No. 20 at 2. In his objection, Petitioner argues that the Magistrate Judge improperly found that trial counsel was ineffective. As such, Petitioner surmises that the Magistrate Judge wrongly found a procedural default.

Respondent contends that Petitioner's claim is procedurally defaulted because the last reasoned state court decision, the California Court of Appeal's opinion, concluded Petitioner had failed to object to the juror's dismissal and had therefore forfeited the claim. P. & A. Supp. Answer, Dkt. No. 14-1 at 14. Thus, according to Respondent, it follows that Respondent has pled the existence of an independent and adequate state procedural bar. Moreover, Respondent notes that Petitioner Grey has not "asserted specific factual allegations that demonstrate the inadequacy of the state procedure . . . ." *Bennett*, 322 F.3d at 586. As such, Respondent submits that Petitioner's claims are procedurally defaulted unless he can show *cause* for the default and *actual prejudice* as a result of the alleged violation of federal law – or a demonstration that failure to consider the claims would result in a *fundamental miscarriage of justice*. *See Coleman*, 501 U.S. at 750. (Emphasis added).

The "cause" prong is satisfied if Petitioner is able to demonstrate some "objective factor" that precluded him from raising his claims in state court. These objective factors could include "interference by state officials" or "constitutionally ineffective counsel."

*See McClesky v. Zant*, 499 U.S. 467, 493-94 (1991). In this case, Petitioner has pointed to his trial counsel's ineffectiveness by account of his counsel's failure to object to Juror No. 8, which in turn caused the procedural default at issue. ECF No. 20-1 at 15-16. As discussed below, the Court agrees with the Magistrate Judge's finding in the R&R that trial counsel was not ineffective. Thus, counsel's failure to object to the juror's removal cannot form the basis for a successful showing of "cause" under *Coleman*. Since Petitioner does not allege any other "objective factor" that precluded him from raising his claims in state court, the Court agrees with the Magistrate Judge in finding that Grey has not established cause for the default. *See McClesky*, 499 U.S. at 493-94.

A showing of prejudice sufficient to excuse procedurally barred claims requires "actual harm resulting from the alleged error." *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998). Because the court addressed the merits of the claim and denied it as an alternative holding, Petitioner has not established prejudice that resulted from the state court's imposition of the procedural bar. In addition, procedural default is not nullified even where, as here, the state court reaches a decision on the merits of the claim as an alternative holding. *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989). As such, the Court agrees with the Magistrate Judge's finding that the state has met its burden under *Bennett* to plead the existence of an independent and adequate state procedural bar.

Thus, the Court agrees with the Magistrate Judge that Petitioner has failed to overcome the procedural bar by demonstrating some "objective factor" that precluded him from raising his claims in state court. Therefore, it follows that Petitioner has not established cause for the default under Coleman, and his claim regarding the removal of Juror No. 8 is procedurally defaulted.

### 2. Merits

Even if Petitioner's claim about the removal of Juror No. 8 was not procedurally defaulted, this Court agrees with the Report and also finds that the claim is meritless. During the defense portion of the case, Dr. Roy Malpass testified as an expert in eyewitness identification. Dr. Malpass had previously conducted experiments regarding

the accuracy of eyewitness identification and lineups while he worked at the University of Texas at El Paso. Pet., Dkt. No. 1-3 at 4. At trial in this instant matter, he testified generally about the unreliability of eyewitness testimony and specifically about the unreliability of the identification and biased lineup procedures in Petitioner's case. *Id.* at 4–5. During a break in the trial, Juror No. 8 asked to speak with the Judge. The following exchange took place in chambers:

> THE COURT: We're in my office with the two attorneys, the reporter and [the Juror]. Yes, sir. Go ahead. Tell us what your concerns are.
>
> JUROR NO. 8: The last witness stated that he was a professor at the University of Texas at El Paso, and I believe I am now a biased juror because of that, because I actually attended the University of Texas at El Paso as a student, and I was a participant in some of the psychological studies that were discussed.
>
> THE COURT: Do you recognize him?
>
> JUROR NO. 8: I do not recognize him. I do not recognize his name, but my fear is that the atmosphere of the researchers that he was a part of influenced me in the past, and it has helped me form an opinion, you know, that is biased in the favor of the defense.
>
> THE COURT: Okay. Let's see. Mr. Rumble, do you have any questions you would like to ask the Juror?
>
> MR. RUMBLE: So what do you mean by biased?
>
> JUROR NO. 8: I feel like I have already formed an opinion of the – once the prosecutor rested, I felt I already formed a good solid opinion, and unless something else changed, then I almost knew which was I was going to cast my ballot for. But now that this witness has come up, I kind of feel guilty. I feel that I would feel guilty voting in that particular way. I'm not sure if it's appropriate to discuss how I would find the case.
>
> THE COURT: No. I think we probably can infer it from what you said. I don't know that we need to go into that. Let me ask you this: When were you there and participating in those studies?

JUROR NO. 8:  Well, there was two periods when I was a student at the University of El Paso.  I was a student between 1999 and 2000, also from 2006 to 2009, and it was during 1999 and 2000 when I participated in a psychological – psychology class, introduction to psychology.  And part of the curriculum of that class was essays.  And in lieu of writing an essay, you can participate in psychological studies, and I participated in a number of those, including studies that involved eyewitness identification.

THE COURT:  Okay.  You will only – bias means that you can't be fair anymore.  It doesn't mean you have a difference in evidence, and you have to resolve that.  Do you think that you are so biased, really, against the prosecutor now?

JUROR NO. 8:  I believe so.  I would feel very bad if I was forced to render a verdict.  I'd constantly be questioning myself whether or not I made the right decision.

THE COURT:  Mr. Rumble, any other questions?

MR. RUMBLE:  No thanks.

THE COURT:  Mr. Prosecutor, any questions?

MR. OJEIL:  No.

THE COURT:  Thank you for your candor.  But you don't recognize the professor?

JUROR NO. 8:  I do not recognize the professor.

THE COURT:  Did you go through the types of studies he describes where something happens?

JUROR NO. 8:  Yes.  And followed up after on it.  Afterwards, followed up on the studies.  And, like, in the years I followed it, I heard stuff, you know, say, like, reports that had – that were related to those studies, and it would pique my curiosity because of my involvement in them.  I would read up on the reports.  I would read their findings that eyewitnesses were very unreliable, according to those studies, and so that influenced my development while I was – from the late teenage years through my 20's to form that opinion.

THE COURT:  Thanks.

Lodgment No. 7, Vol. 6 at 877–80.

At the conclusion of this colloquy, the prosecutor told the judge that the juror should be replaced.  The defense attorney did not object.  *Id.* at 880–81.  Subsequently, the judge excused Juror No. 8.  *Id.* at 881.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the right to a fair trial by a panel of impartial, 'indifferent' jurors."  *Irwin v. Dowd*, 366 U.S. 717, 722 (1961).  A fair trial requires that a jury reach a verdict based only on the evidence presented at trial.  *Turner v. Louisiana*, 379 U.S. 466, 472 (1965).  In California, the mechanism for protecting this right is California Penal Code § 1089, which authorizes a trial judge to replace a juror when that juror "dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, or if a juror requests a discharge and good cause appears therefor."  Cal. Penal Code § 1089 (West 2003).  The Ninth Circuit has found California Penal Code § 1089 complies with the Sixth Amendment's requirements.  *Bell v. Uribe*, 748 F.3d 857, 869 (9th Cir. 2014).  Accordingly, where, as here, a petitioner challenges a California trial court's removal of a juror, the question is whether the application of California Penal Code § 1089 violated a petitioner's Sixth Amendment rights.  *Perez v. Marshall*, 119 F.3d 1422, 1426 (9th Cir. 1997).

The Ninth Circuit has recognized that United States Supreme Court authority on the subject of juror bias is "sparse."  *Williams v. Johnson*, 840 F.3d 1006, 1010 (9th Cir. 2016).  "Although we know that biased jurors may be dismissed from deliberations without offending the Constitution, we don't know precisely what it means for a juror to be biased."  *Id.* (citing *United States v. Wood*, 299 U.S. 123, 146 (1936)).  The Supreme Court has stated, however, that an unbiased juror is one who "can lay aside his impression or opinion and render a verdict based on the evidence presented in court."  *Irwin*, 366 U.S. at 723 (citing *Spies v. People of State of Illinois*, 123 U.S. 131 (1887);

*Reynolds v. United States*, 98 U.S. 145 (1878); *Holt v. United States*, 218 U.S. 245 (1910).) "[T]he determination [of bias] is essentially one of credibility, and therefore largely one of demeanor," and a trial court's determination about juror bias is entitled to "special deference." *Patton v. Yount*, 467 U.S. 1025, 1038 (1984) (citations omitted).

Here, Petitioner contends the application of California Penal Code § 1089, and the subsequent removal of Juror No. 8, violated his Sixth Amendment rights because (1) the trial judge's inquiry was insufficient and (2) the decision was based on an unreasonable determination of the facts. Pet., Dkt. No. 1-2 at 5; Traverse, Dkt. No. 20-1 at 18–20. The state appellate court concluded that even if Petitioner preserved on appeal his claim regarding the removal of Juror No. 8, the trial court properly excused the juror based on bias against the prosecution. Dkt. No. 21-1 at 10. The Magistrate Judge found this conclusion was neither an unreasonable application of clearly established Supreme Court law, nor an unreasonable determination of the facts. Dkt. No. 22 at 16. In his objection, Petitioner again argues that the appellate court and the Magistrate Judge unreasonably denied relief on the merits because the trial judge performed only a superficial inquiry into whether Juror No. 8 was actually biased. In addition, Petitioner argues that while the juror did express some concerns about his ability to be impartial, the juror never formed any final opinions or indicated that he would not engage in deliberations. Dkt. No. 23 at 3-4. Therefore, the Petitioner surmises it is impossible to know whether the juror's request for discharge stemmed from actual bias or from doubts the juror harbored about the sufficiency of the government's evidence.

As the appellate court observed, "'[A]ctual bias' is 'the existence of a state of mind on the part of the juror in reference to the case, or to any of the parties, which will prevent the juror from acting with entire impartiality, and without prejudice to the substantial rights of any party.'" Dkt. 1-3 at 10 (quoting CAL. CODE CIV. PROC. § 225(b)(1)(C)). In this case, the Court finds that Juror No. 8 expressed concerns that he was biased against the prosecution, explaining that he attended the university where Dr. Malpass taught, participated in some of the studies involving eyewitness identification

13

that Dr. Malpass had referred to in his testimony, followed up on those studies for years by reading reports, and had "form[ed] an opinion . . .that [was] biased in the favor of the defense."  Lodgment No. 7, Vol. 6 at 877–80.  The trial court told the juror that bias did not mean merely resolving a difference in the evidence, but rather that he could no longer be fair.  *Id.* at 879.  It then asked the juror if he was biased against the prosecution.  *Id.* The juror responded affirmatively, further stating that he would "feel very bad" if forced to render a verdict.  *Id.*

In looking to the juror's statements, the Court reasonably concludes that he had formed a solid opinion at the close of the prosecution's case and, due to his participation in some of the studies cited by Dr. Malpass regarding the unreliability of eyewitness testimony, later felt "guilty" about his opinion in light of Dr. Malpass's testimony, Lodgment No. 7, Vol. 6 at 878, this Court fails to see how additional inquiry would have changed the juror's opinion.  The juror stated if he continued to participate in the trial, he would "constantly be questioning [himself] whether or not [he] made the right decision." *Id.* at 879.  Given the juror's statements about his strongly held opinions regarding eyewitness testimony and Dr. Malpass's testimony, as well as the juror's own belief that he was biased against the prosecution, it was not unreasonable for the state appellate court to find the trial court's inquiry into the juror's bias was sufficient.

Furthermore, this Court cannot say the state court's decision finding the juror was biased was an unreasonable determination of the facts.  Because the juror maintained his position even after the trial court made certain the juror understood what bias meant, no further inquiry was necessary.  These facts support a conclusion by the state court that Juror No. 8 could not "lay aside his impression or opinion and render a verdict based on the evidence presented in court," *Irwin*, 366 U.S. at 723, and that his beliefs or opinions "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath," *Wainwright v. Witt*, 469 U.S. 412, 433.

Beyond the fact that the claim regarding the removal of Juror No. 8 is procedurally barred, the state court's denial of this claim was neither contrary to, nor an unreasonable

application of, clearly established Supreme Court law. 28 U.S.C. § 2254(d)(2). Nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Id.* Therefore, Petitioner's claim must fail, and habeas relief on this ground is **DENIED**.

### B. Ineffective Assistance of Counsel (grounds two and three)

Petitioner argues that he received ineffective assistance of trial counsel for two reasons: (1) counsel did not present available alibi evidence which would have supported Petitioner's mistaken identity defense, Pet., Dkt. No. 1-2 at 6–19; Traverse, Dkt. No. 20-1 at 20–23; and (2) counsel failed to object to the removal of Juror No. 8, Pet., Dkt. No. 1-2 at 19–23; Traverse, Dkt. No. 20-1 at 23–24.

In order to establish that his trial counsel was ineffective under *Strickland*, a challenger must show: (1) his trial counsel's performance was deficient; and, (2) trial counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668 (1984); *see also Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir. 2012) (citing *Strickland*, 466 U.S. at 688, 694). In other words, a petitioner must demonstrate that his "counsel made errors so serious . . . that counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms. *See Strickland*, 466 U.S. at 687-88. *See also Williams v. Taylor,* 529 U.S. 362, 363 (2000) (stating it is beyond question that *Strickland* constitutes "clearly established" precedent governing ineffective assistance of counsel claims.

When delving into this inquiry, counsel is strongly presumed to have rendered adequate assistance and used reasonable professional judgment when making decisions. *Id.* at 690. Ninth Circuit precedent further makes clear that "[r]eview of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." *Hensley v. Crist*, 67 F.3d 181, 184 (9th Cir. 1995). And "even under de novo review, the standard for judging counsel's representation is a most deferential one." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (emphasis omitted). This review is conducted from counsel's perspective at

16-cv-2764-GPC-AGS

the time of the alleged error, in light of the totality of circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

To establish prejudice, defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. That counsel's errors "'had some conceivable effect on the outcome'" is not enough. *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 693). Further, *Strickland* requires "[j]udicial scrutiny of counsel's performance . . . be highly deferential." *Id.* at 689. There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 686–87. The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one. *Id.* at 697.

### 1. Failure to Call Alibi Witnesses

Petitioner argues counsel should have called three witnesses—two of Grey's sisters, Coquise and Chikia Flournoy, and the sisters' friend of many years, Justice Williams—to establish that Petitioner was at his mother's home caring for his daughter at the time of the shooting. Pet., Dkt. No. 1-2 at 13–19; Traverse, Dkt. No. 20-1 at 21–23. According to Petitioner, these witnesses, in conjunction with Dr. Malpass's testimony regarding the unreliability of eyewitness testimony, would have bolstered his contention at trial that he was the victim of mistaken identification. Pet., Dkt. No. 1-2 at 13–19; Traverse, Dkt. No. 20-1 at 21–23. Petitioner attached declarations from the three witnesses to the petition for a writ of habeas corpus he filed in the California Supreme Court as Exhibits E, F, and G as support for his claim. Pet'rs Lodgment No. 1, Dkt. No. 2-1 at 81–83.

The Magistrate Judge found that trial counsel reasonably concluded none of the proposed witnesses would have been helpful to the defense and may have even been detrimental. Dkt. No. 22 at 19. Not only could the witnesses not provide a strong alibi for Petitioner, but also, on cross examination, the prosecutor would have exposed their

connections to Bennett and Velasquez and their motivation for testifying in Petitioner's favor. *Id.* Moreover, the Magistrate Judge found there was no reasonable probability the result of Petitioner's trial would have been different had the witnesses testified. *Id.* In response to the Magistrate Judge's Report, Petitioner concedes that while it is true the witnesses could not conclusively establish where Petitioner was at the date and time of the shooting, they nevertheless would have offered meaningful testimony about the events not long before the shooting. Dkt. No. 23 at 5. Had counsel presented the testimony of the three alibi witnesses, Petitioner argues, there is a reasonable probability that the outcome of the trial would have been different. *Id.*

The Court agrees with the Magistrate Judge's Report. Specifically, the Court finds that none of the witnesses could provide exculpatory testimony. In addition, it is unlikely that the jury would have given their testimony much weight in light of their relationships to Petitioner and the biases which would have been exposed on cross examination. As such, the Court finds that Petitioner cannot demonstrate that trial counsel's failure to call alibi witnesses fell below an objective standard of reasonableness. Moreover, the record does not suggest the declarations were significant to the outcome of the trial so as to have prejudiced the defense. Thus, the Court finds that Petitioner's counsel acted in a manner that reasonably satisfies *Strickland*'s deferential standard. *Harrington*, 562 U.S. at 105. Even if counsel's actions "fell below an objective standard of reasonableness," Petitioner does not show the "deficient performance prejudiced the defense." *Strickland* 466 U.S. at 687–88.

For the foregoing reasons, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. 28 U.S.C. § 2254(d)(2). Nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Id.* Therefore, the Court will **DENY** habeas relief on this ground.

### 2. Failure to Object to the Removal of Juror No. 8

1    Petitioner claims counsel was ineffective for failing to object to the removal of

2    Juror No. 8.  Pet., Dkt. No. 1-2 at 19–23.  The Magistrate Judge found it was reasonable

3    for counsel to conclude that any objection to the removal of Juror No. 8 would have been

4    unsuccessful and, in any event, Petitioner did not establish he was prejudiced by

5    counsel's failure to object.  Dkt. No. 22 at 19–20.  In his objection, Petitioner contends

6    otherwise: had counsel argued lack of bias of Juror No. 8, there is a reasonable

7    probability the judge would not have excused the juror.  Dkt. No. 23 at 6.

8        In order to merit habeas relief under the AEDPA, Petitioner must show that the

9    state court's ruling that counsel was not ineffective constituted an unreasonable

10   application of *Strickland*.  28 U.S.C. § 2254(d)(1).  As discussed above, the removal of

11   the juror was proper under California law.  The juror stated he "form[ed] an opinion . . .

12   that [was] biased in favor of the defense" due to his participation in some of the studies

13   cited by Dr. Malpass regarding the unreliability of eyewitness testimony.  Lodgment No.

14   7, Vol. 6 at 877–878.  The juror stated if he were forced to render a verdict, he would

15   "constantly be questioning [himself] whether or not [he] made the right decision."  *Id.* at

16   879.  In light of these facts, it was reasonable for the California Supreme Court to

17   summarily deny Petitioner's ineffective assistance of counsel claim.  Counsel reasonably

18   concluded that any objection to the removal of the juror would have been unsuccessful.

19   *Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance . . . [is]

20   reasonableness under prevailing professional norms.").

21       Even if counsel's performance was deficient when he failed to object to the

22   removal of Juror No. 8, Petitioner has not established he was prejudiced by counsel's

23   failure to do so.  Following the questioning of Juror No. 8, the trial judge stated, "I think

24   in view of what he's saying, that I should excuse him.  Do I do that with your – over your

25   objection?"  Lodgment No. 7, Vol. 6 at 881.  Counsel responded that he would submit on

26   the issue.  *Id.*  Here, the trial judge clearly indicated he would excuse Juror No. 8 even if

27   counsel had objected.  Thus, the record does not support Petitioner's assertion that but for

28

the counsel's failure to object to the removal of the juror, there is a reasonable probability the judge would not have excused him.

For the foregoing reasons, the state court's denial of Petitioner's ineffective assistance of counsel claim for failure to object to the removal of the juror was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. 28 U.S.C. § 2254(d)(2). Nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Id.* Therefore, habeas relief on this ground is **DENIED**.

### C. Refusal to Give Jury Instruction on Eyewitness Identification (ground four)

Petitioner's last claim relates to the trial court's refusal to give an instruction on eyewitness testimony. Specifically, Petitioner asked the trial judge to give a modified version of CALCRIM No. 315 to inform the jury they should view the eyewitness testimony with caution. Pet., Dkt. No. 1-2 at 23; Traverse, Dkt. No. 20-1 at 25–26. Respondent contends the claim is unexhausted because Petitioner did not alert the state court to the federal constitutional basis for his claim. P. & A. Supp. Answer, Dkt. No. 14-1 at 17. Respondent also argues the claim should nevertheless be rejected as meritless. *Id.* The Magistrate Judge found that although Petitioner in his state court filings did not explicitly state that failure to give the requested instruction violated his federal constitutional rights, the claim is technically exhausted. Dkt. No. 22 at 21. However, the Magistrate Judge concluded the claim, although exhausted, was procedurally defaulted and that Petitioner fails to overcome the default. *Id.* at 21–22. In any event, the Magistrate Judge notes, Petitioner's claim fails on the merits. *Id.* at 22.

#### 1. Procedural Default

"[I]f a claim is unexhausted but [independent and adequate] state procedural rules would now bar consideration of the claim, it is technically exhausted but will be deemed procedurally defaulted unless the petitioner can show cause and prejudice." *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011); *Coleman*, 501 U.S. 722, 735, n. (1991). The

procedural bar of *In re Dixon*, 41 Cal. 756, 759 (1953) (a defendant cannot raise a claim in a habeas corpus petition that he could have, but did not, raise on appeal), and California's timeliness rule, as explained in *In re Robbins*, 18 Cal. 4th 770, 780 (1998), have both been deemed independent and adequate state procedural bars. *Johnson v. Lee*, __ U.S. __, 136 S. Ct. 1802, 1805 (2016) (per curiam); *Walker v. Martin*, 562 U.S. 307, 317 (2011). To overcome the procedural default, Petitioner must establish cause and prejudice or that a fundamental miscarriage of justice has occurred. *Coleman*, 501 U.S. at 750.

As discussed above in section, "cause" for the purposes of procedural default constitutes some "objective factor" that precluded Petitioner from raising this claim in state court, such as interference by state officials or constitutionally ineffective counsel. *McClesky*, 499 U.S. at 493–94. Prejudice means "actual harm resulting from the alleged error." *Vickers*, 144 F.3d at 617. The "miscarriage of justice" exception requires a petitioner to show that "a constitutional violation has probably resulted in one who is actually [and factually] innocent." *Schlup*, 513 U.S. at 327; *Wood*, 130 F.3d at 379 ("actual innocence" means factual innocence, not simply legal insufficiency).

Petitioner does not allege any objective factor that precluded him from raising the federal aspect of his jury instruction claim in state court, and thus he has not established cause for the default. Nor has Petitioner shown he was prejudiced by the imposition of the procedural bar because the claim fails on the merits, as discussed below. Also, because Petitioner has not presented sufficient evidence to establish he is actually innocent of the charges for which he was convicted, Petitioner fails to establish that a fundamental miscarriage of justice would occur if the claim is not addressed. *See Coleman*, 501 U.S. at 750; *Schlup*, 513 U.S. at 327. Therefore, the procedurally defaulted claim is not excused.

## 2. Merits

Even if Petitioner's claim regarding trial court's refusal to give a modified jury instruction was not procedurally defaulted, the claim still fails on the merits.

Instructional error can form the basis for federal habeas corpus relief only if it is shown that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Murtishaw v. Woodford*, 255 F.3d 926, 971 (9th Cir. 2001) (citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)); *see also Henderson*, 431 U.S. at 154. The allegedly erroneous jury instruction cannot be judged in isolation, however. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). Rather, it must be considered in the context of the instructions as a whole and the trial record. *Id.*

"An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). "The significance of the omission of such an instruction may be evaluated by comparison with the instructions that were given." *Id.* at 156.

The trial court gave the jury a modified version of CALCRIM No. 315 which addresses eyewitness testimony. It instructed the jury as follows:

> You have heard eyewitness testimony identifying the defendant. Each of you alone must evaluate the credibility of the witnesses. As with any other witness, you must decide whether an eyewitness gave truthful and accurate testimony. Consider the possibility that a witness made an honest but mistaken identification.
>
> In evaluating identification testimony, consider all of the evidence, including but not limited to the following questions:
>
> - Did the eyewitness know or have contact with the defendant before the event?
> - How well could the witness see the perpetrator?
> - What were the circumstances affecting the witness's ability to observe, such as lighting, weather conditions, obstructions, distance between the witness and the perpetrator at the time of the observation, and duration of observation?
> - How closely was the witness paying attention?
> - Was the witness under stress when he or she made the observation?
> - Did the witness give a description and how does that description compare to the defendant?

21

- How much time passed between the event and the time when the witness identified the defendant?
- Was the witness ever asked to pick the perpetrator out of a group?
- Did the witness ever fail to identify the defendant?
- Did the witness ever change his or her mind about the identification?
- Are the witness and the defendant of different races?
- Was the witness able to accurately identify other participants in the crime?
- Was the witness able to identify the defendant in a photographic or physical lineup?
- What was the construction and presentation of the lineup shown to the witness?
- Were there any other circumstances affecting the witness's ability to make an accurate identification?

The People have the burden of proving beyond a reasonable doubt that it was the defendant who committed the crime. If the People have not met this burden, you must find the defendant not guilty.

Lodgment No. 8, Vol. 2 at 379–80.

Defense counsel requested the trial judge add the following language to the instruction: "You must view eyewitness testimony with caution and evaluate it carefully." Lodgment No. 7, Vol. 7 at 990. The trial judge declined to do so because he believed the requested instruction to be argumentative and thus properly belonging in the arguments of counsel to the jury rather than in instructions. *Id.* at 992. Furthermore, the judge believed CALCRIM No. 301, which cautions the jury to carefully review all the evidence when a fact is proven by only one witness, sufficiently addressed trial counsel's concern. *Id.* at 990.

In considering the jury instructions as a whole, as the Court is required to do under *Estelle*, this Court cannot find that the failure to give Petitioner's requested instruction addition "so infected the entire trial that the resulting conviction violates due process."

*Murtishaw*, 255 F.3d at 971; *Henderson*, 431 U.S. at 154. In his objection, Petitioner argues the omission of the cautionary language had a substantial and injurious effect or influence in determining the jury's verdict. Dkt. No. 23 at 7. However, the jury was already instructed on the factors affecting the reliability of an eyewitness identification with CALCRIM No. 315. Lodgment No. 8, Vol. 2 at 379–80. The trial court also instructed the jurors with CALCRIM No. 301, which cautioned the jury that they should carefully review all of the evidence before concluding that the testimony of only one witness proves a fact. Lodgment No. 7, Vol. 7 at 1050. Moreover, the jury heard testimony from the defense expert, Mr. Malpass, about the problems with eyewitness identifications in general and the identification in Petitioner's particular case. Lodgment No. 7, Vol. 6 at 853, 858–99. And finally, the defense counsel focused the jury's attention on these issues during closing argument. Lodgment No. 7, Vol. 7 at 1136–50. As such, the Court finds that the given instructions, Dr. Malpass's expert testimony, and the argument of defense counsel collectively addressed the issues relevant to the reliability of eyewitness identification and more than properly informed the jurors of their duty to carefully consider the evidence. An additional cautionary instruction on eyewitness evidence would be redundant and perhaps even argumentative.

As such, the trial court's refusal to give Petitioner's requested instruction regarding eyewitness identification did not infect the trial with unfairness so as to violate due process. Accordingly, this Court finds Petitioner's claim inappropriate for habeas relief.

### D. Evidentiary Hearing

The Magistrate Judge concluded Petitioner is not entitled to an evidentiary hearing. Dkt. No. 22 at 26. Petitioner did not contend otherwise in his objection. Evidentiary hearings in § 2254 cases are governed by AEDPA, which "substantially restricts the district court's discretion to grant an evidentiary hearing." *Baja v. Ducharme*, 187 F.3d 1075, 1077 (9th Cir. 1999). The provisions of 28 U.S.C. § 2254(e)(2) control this decision:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
(A) the claim relies on –
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

In order to determine whether to grant an evidentiary hearing, the court must first "determine whether a factual basis exists in the record to support the petitioner's claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 669 (9th Cir. 2005) (citing *Baja*, 187 F.3d at 1078). If not, the court must "ascertain whether the petitioner has 'failed to develop the factual basis of the claim in State court.'" *Id.* at 669–70. A failure to develop the factual basis of a claim in state court implies "some lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *See Williams v. Taylor*, 529 U.S. 420, 432 (2000). The Supreme Court has said that "[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437.

Petitioner is limited to the facts presented to the state court. *Cullen v. Pinholster*, 563 U.S. 170 (2011). In *Pinholster*, the Supreme Court held that where habeas claims have been decided on their merits in state court, a federal court's review must be confined to the record that was before the state court. *Id.* at 181–82. Petitioner can only proceed to develop additional evidence in federal court if either § 2254(d)(1) or (d)(2) is first satisfied. *See Sully v. Ayers*, 725 F.3d 1057, 1076 (9th Cir. 2013) (stating "an evidentiary

hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief" and citing *Pinholster*, 563 U.S. at 203, n. 20). Here, for all the reasons discussed above, Petitioner fails to overcome § 2254(d)'s limitation on habeas relief. Accordingly, this Court **DENIES** Petitioner's request for an evidentiary hearing.

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11 of the Federal Rules Governing § 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability should be issued only where the petition presents "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of appealability "should issue when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, and that jurists of reason would not find it debatable whether the district court was correct in its procedural ruling. *See id.* Accordingly, the Court **DENIES** a certificate of appealability.

## CONCLUSION

For the reasons set forth above, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation, **DENIES** Petitioner's request for an evidentiary hearing, **OVERRULES** Petitioner's objections, **DENIES** the petition for a writ of habeas corpus, and **DENIES** a certificate of appealability.

**IT IS SO ORDERED.**

Dated:  October 15, 2019

Hon. Gonzalo P. Curiel
United States District Judge